UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| In re:<br><br>DAVID M DURHAM<br>DENISE M DURHAM<br><br>　　　　Debtors | Chapter 13<br>Case No. 11-44036-MSH |

**MEMORANDUM OF DECISION AND ORDER DISMISSING CASE**

On May 22, 2009 David and Denise Durham commenced their first bankruptcy case under Chapter 13 of the United States Bankruptcy Code (11 U.S.C. § 101 *et seq*.). In their amended Chapter 13 plan, the Durhams proposed to pay their unsecured creditors a 1.37% dividend and to pay in full their pre-petition mortgage arrearages to two secured creditors— Everhome Mortgage Company and Digital Federal Credit Union. On December 17, 2009, Everhome filed a motion for relief from stay seeking to foreclose its mortgage on the grounds that the Durhams had failed to make post-petition mortgage payments. Everhome and the Durhams ultimately entered into a stipulation resolving Everhome's stay relief motion which provided that if the Durhams failed to make payments as set forth in the stipulation, Everhome would be entitled to relief from stay upon filing an affidavit of non-compliance. The stipulation was approved on February 22, 2010. The Durhams' amended plan was confirmed on June 10, 2010. On December 30, 2010, Everhome filed an affidavit of non-compliance to which the Durhams did not respond. On January 18, 2011, Everhome was granted relief from the automatic stay.

On July 18, 2011, Digital, which in addition to its home mortgage loan had also lent the Durhams money to purchase a Jeep Grand Cherokee Laredo, filed a motion for relief seeking to repossess the vehicle for failure of the Durhams to make post-petition loan payments. With no

1

objection by the Durhams, Digital's motion for relief from stay was granted on August 4, 2011. Six days later, the Durhams filed a motion to dismiss their Chapter 13 case, which was allowed pursuant to Bankruptcy Code § 1307(a). Less than two months after the Durhams voluntarily dismissed their first case, they filed the instant Chapter 13 case.

On September 26, 2011, the same day the Durhams filed their second Chapter 13 petition commencing this case, they moved to extend the automatic stay pursuant to Bankruptcy Code § 362(c)(3), which limits the duration of the automatic stay for debtors who had a prior case dismissed within the previous year. In such situations, repeat filers are allowed a temporary thirty-day automatic stay which may be extended after notice and a hearing if they can demonstrate that the later case was filed in good faith as to the creditors to be stayed. At the hearing on the motion, the Chapter 13 trustee objected to the extension of the stay based on the limitations of Bankruptcy Code § 109(g)(2), which provides that a debtor is ineligible to be a debtor under any chapter of the Bankruptcy Code if the debtor voluntarily dismissed his or her case after a creditor filed a request for relief from stay under § 362, as the Durhams had done in their prior case. The trustee did not raise a corollary issue, namely the applicability of Bankruptcy Code § 362(b)(21) which excepts from the automatic stay the enforcement of real estate liens if pursuant to § 109(g) a debtor is ineligible to be a debtor.

Thus the Durhams' eligibility to file bankruptcy is a threshold question that must be determined at the outset of this case. *See In re Marrama*, 345 B.R. 458, 473 (Bankr. D. Mass. 2006) (citing *In re Berenato*, 226 B.R. 819, 823 (Bankr. E.D. Pa. 1998)). Although courts were initially divided on whether § 109 is jurisdictional, there appears to be a developing trend interpreting § 109 as a provision governing a debtor's eligibility for relief in bankruptcy rather than

a limitation on the power of the court to grant bankruptcy relief. *See In re Ross*, 338 B.R. 134, 137-39 (Bankr. N.D. Ga. 2006) (agreeing with "the two appellate courts to have considered the issue" that § 109(g) is not jurisdictional); *see also In re Fiorillo*, 2011 WL 2535002, at *6 (D. Mass. 2011) (concerning § 109(h)); *In re Ramos*, 212 B.R. 29, 30 (Bankr. D.P.R. 1997). "[A] bankruptcy filing within 180 days of a prior dismissal under Section 109(g) cannot be a nullity or void *ab initio*, because there is a threshold issue to be decided, the issue of whether the debtor 'may be a debtor' in the subsequent case." *In re Flores*, 291 B.R. 44, 52 (Bankr. S.D.N.Y. 2003), *superseded on other grounds by statute as stated in In re Salazar*, 339 B.R. 622, 631-32 (Bankr. S.D. Tex. 2006)); *see also In re Zarnel*, 619 F.3d 156, 165-66 (2d Cir. 2010) (rejecting the argument that a debtor ineligible to file under § 109(h) does not commence a case under § 301). Thus until the court rules on eligibility, the filing of a petition by an individual possibly ineligible under § 109(g) effectively commences a bankruptcy case.

Although the Chapter 13 Trustee has not moved formally for dismissal of this case, I find it entirely appropriate to address the question of eligibility under § 109(g)(2) at this time. Under § 105(a) of the Bankruptcy Code, a bankruptcy judge is given the discretion to

> issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

While this section "does not explicitly prescribe for [sic] *sua sponte* dismissal or conversion," § 105(a) "accommodates such a result." *In re Kazis*, 256 B.R. 242, 244 (Bankr. D. Mass. 2000) (quoting *In re Hammers*, 988 F.3d 32, 34-35 (5th Cir. 1993)). Furthermore, the interplay between § 109(g) and § 362(b)(21) mandates the immediate evaluation of the applicability of § 109(g) to this case.

3

> Section 109(g)(2), in addressing debtor eligibility, provides, in relevant part:
>
> Notwithstanding any other provision of this section, no individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> …
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

While the language appears straightforward, courts are divided on its proper application. *See In re Richter*, 2010 WL 4272915, at *2 (Bankr. N.D. Iowa 2010). Three distinct views have been articulated—a mandatory approach, a discretionary approach, and a causal connection approach.[1] *See In re Richter*, 2010 WL 4272915, at *2 (Bankr. N.D. Iowa 2010).

Courts following the mandatory approach consider § 109(g) to be unambiguous. Adhering to the U.S. Supreme Court's admonition in *Connecticut National Bank v. Germain* that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," these courts interpret § 109(g)(2) as an eligibility requirement mandating dismissal regardless of the debtor's motives in filing a second case within the 180-day time bar. *See In re Andersson*, 209 B.R. 76, 78 (6th Cir. BAP 1997) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)); *Kuo v. Walton*, 167 B.R. 679 (M.D. Fla. 1994) (citing *In re Tooke*, 133 B.R. 661 (Bankr. M.D. Fla. 1991)).

Courts taking the discretionary approach construe § 109(g)(2) as discretionary to the extent "the creditor is not unfairly prejudiced, a dismissal would be absurd or illogical, or when the

---

[1] Although Judge Collins in *In re Richter* references a fourth approach—the "requirement of [a] pending § 362 motion at [the] time of voluntary dismissal," I consider this approach to be a subset of the causal connection approach. *See In re Richter*, 2010 WL 4272915, *2 (Bankr. N.D. Iowa 2010).

4

creditor (and not debtor) acted in bad faith." *In re Richter*, 2010 WLO 4272915, at *3 (Bankr. N.D. Iowa 2010). These courts suggest that an absolutist interpretation of § 109(g)(2) could lead to "absurd results" in rewarding creditors acting in bad faith while punishing good-faith debtors or otherwise not effectuating Congress's intent in enacting § 109(g)(2) to curb abuse by a limited group of debtors. *In re Richardson*, 217 B.R. 479, 482 (Bankr. M.D. La. 1998); *see In re Luna*, 122 B.R. 575, 577 (9th Cir. BAP 1992) ("Mechanical application of section 109(g)(2) would reward [the creditor] for acting in bad faith and punish [the debtor] for acting in good faith."); *In re Santana*, 110 B.R. 819 (Bankr. W.D. Mich. 1990) (holding that courts should apply § 109(g)(2) as Congress intended it—to operate in only a limited number of cases).

The third approach and the one I adopt—the causal connection approach—interprets § 109(g)(2) as requiring some relationship between a debtor's request for a voluntary dismissal and a creditor's request for relief from the automatic stay. *See In re Copman*, 161 B.R. 821, 824 (Bankr. E.D. Mo. 1993) (finding "no connection" between the debtor's voluntary dismissal of the case and the creditor's request for relief from stay). It stakes out a middle ground between the other two approaches. The underlying rationale for the causal connection approach is that § 109(g)(2) was enacted "for the sole purpose of curbing abusive repetitive bankruptcy filings by debtors seeking to overcome the grant of relief to a creditor from a stay in a prior case" and the statutory language is a direct response to that concern. *In re Beal*, 347 B.R. 87, 92 (Bankr. E.D. Wis. 2006) (citing S.Rep. No. 65, 98th Cong. 1st Sess. 74 (1983)). Without § 109(g)(2), § 1307(a), for example, offers debtors the unlimited right to voluntarily dismiss their cases and then refile at their own convenience to, in effect, "string along a foreclosing creditor." *In re Copman*, 161 B.R. 821, 823 (Bankr. E.D. Mo. 1993) (citing *In re Santana*, 110 B.R. 819, 821 (Bankr. W.D. Mich. 1990)); *see*

5

*In re Ramos*, 212 B.R. 29, 30 (Bankr. D.P.R. 1997).

The Durhams' first Chapter 13 case was dismissed on their motion six days after the granting of stay relief to Digital in connection with the Durhams' car loan. Stay relief had previously been granted to Everhome in connection with the Durhams' mortgage loan. The Durhams' current Chapter 13 case followed less than two months from dismissal of the first case. The Durhams' counsel conceded at the hearing on the motion to extend the stay that both secured creditors, but especially Digital, had been bearing down hard on the Durhams. Indeed, the Durhams' current proposed Chapter 13 plan shows arrearages to Everhome of $25,367.00 (up from $8,007.79 in the plan confirmed in the prior case) and arrearages to Digital of $4,547.00 (there were none in the prior case) with a microscopic proposed dividend to unsecured creditors of just one-half of one percent. This case is all about Everhome and Digital. The Durhams are spot-on among debtors classified as ineligible by Bankruptcy Code § 109(g)(2).

As there is no basis to suspend the application of § 109(g)(2), I find that the Durhams were ineligible to file a second bankruptcy case within 180 days of voluntarily dismissing their first one. This case is hereby DISMISSED. The motion to extend the stay is moot although pursuant to Bankruptcy Code § 362(b)(21) there would be no stay against Everhome in any event.

SO ORDERED.

At Worcester, Massachusetts this 25th day of October, 2011.

By the Court,

_\[signature\]_

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   James P. Ehrhard, Erhard & Associates, P.C.
                     Worcester, MA
                     for David and Denise Durham

                     Denise Pappalardo, Chapter 13 Trustee
                     Worcester, MA